43 P.3d 788

**Geneda SPIVEY, Claimant–Respondent,**

v.

**NOVARTIS SEED INC., Employer, and Travelers Indemnity Company of Illinois, Defendants–Appellants.**

No. 26657.

Supreme Court of Idaho, Boise, December 2001 Term.

March 19, 2002.

Bowen & Bailey, Boise, for defendants-appellants. David V. Nielsen argued.

Richard S. Owen, Nampa, for claimant-respondent. Richard S. Owen argued.

KIDWELL, Justice.

Novartis Seed Company and Travelers Indemnity Company of Illinois appeal the Industrial Commission's award of benefits to Geneda Spivey for an injury caused by an accident arising out of and in the course of her employment.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Since 1989, Geneda Spivey (Spivey) was employed by Novartis Seed Company (Novartis) as a seed sorter. Her job entailed removing defective seeds off a conveyor belt for approximately eight hours, while sitting or standing. According to the Industrial Commission Rehabilitation Division Job Site Evaluation, the usual type of arm movement for a seed sorter was below shoulder level; a small amount of time the movement was at shoulder level. The evaluation did not comment on the time spent lifting above the shoulder.

No evidence in the record contradicted Spivey's testimony that she had not experienced any shoulder pain prior to October of 1997. She testified that on October 28, 1997, while sorting seed, she moved "sort of sideways" to pick out bad seeds and "felt a pop and burning in the top of her right shoulder." Spivey was the only seed sorter at her end of the conveyor belt. She reported the incident to her supervisor the next day, October 29, 1997, and was told that if the pain persisted to an unbearable point, Novartis would send her to a doctor.

Spivey continued to work, testifying that her shoulder hurt continuously and got worse as the months passed. She met with admin-istration personnel at Novartis on or about January 21, 1998, and requested medical care. Novartis sent her to Dr. Douglas Hill, who diagnosed Spivey with a frozen right shoulder, with abduction limited to 40 degrees and internal rotation limited to 10 degrees. An MRI taken on February 6, 1998, showed an incomplete rotator cuff tear with moderate degenerative arthritis of the AC joint. Dr. Hill referred Spivey to Dr. Gary Botimer, an orthopedic surgeon. On February 16, 1998, he gave a rendition of the cause of the accident very similar to that given by Dr. Hill, and scheduled surgery for February 26, 1998.

On February 13, 1998, Spivey filed a first report of injury with the Industrial Commission (Commission). Ms. Glenda Barrett, Novartis' administrative manager, prepared the document, but it was not signed by the claimant. On February 19, 1998, according to Dr. Hill's records, he spoke with the surety's adjuster, GAB, and after the conversation noted that the forward-reaching motion described by Spivey was inconsistent with the usual cause of rotator cuff tears. He concluded that her injury was not related to her work accident, and GAB denied Spivey's claim on February 27, 1998. Because of the denial of benefits, Spivey's surgery was postponed.

On March 9, 1998, Dr. Botimer wrote to GAB and stated that he believed her injury was the result of her work accident, contrary to Dr. Hill's opinion. At the request of defendants, Dr. George Nicola examined Spivey on April 4, 1998. He determined that her employment was not the cause of her shoulder injury. However, the referee found that Dr. Nicola based his opinion almost exclusively upon a video of the job site, as opposed to his examination of Spivey.

On May 7, 1998, Dr. Botimer performed an acromioplasty with rotator cuff repair. In a letter to GAB on May 18, 1998, he stated that if the job site video was an accurate portrayal of Spivey's job, then he agreed with Dr. Nicola's opinion. However, he noted that Spivey took "significant exception" to whether the video accurately represented what she did at Novartis. Dr. Botimer stated that if Spivey's account were accurate,

then a person would get a different impression. Spivey's frozen shoulder condition returned after the surgery, and manipulation under anesthesia was performed on July 9, 1998; this occurred again on December 28, 1998. On or about December 28, 1998, Novartis terminated Spivey's employment.

A hearing was held on August 3, 1999. During the hearing, the referee found Spivey to be a credible witness, but on the other hand, found the testimony of the Novartis employees to be inconsistent and not credible. Spivey took the post-hearing deposition of Dr. Botimer. He indicated that her description of her daily work activity could lead to a rotator cuff tear. He further stated that Spivey's degenerative arthritis and the presence of osteophytes might have weakened and compromised the rotator cuff until a minor trauma could cause a tear. The defendants took the post-hearing deposition of Dr. Nicola. He stated that the act of reaching across the conveyor belt and removing very light weight objects would not be enough to cause a pop or rotator cuff tear. He did concede, however, that with the condition of Spivey's shoulder and AC joint coupled with the reaching motion, there was a greater chance she would damage her rotator cuff. He also admitted that the accident described by Spivey at least aggravated her condition and resulted in the need for treatment. Both sides submitted their post-hearing depositions, and the case came under advisement on January 21, 2000.

The referee found that Spivey had suffered an injury to her right shoulder caused by an accident arising out of and in the course of her employment on October 28, 1997. The referee's findings were based on Spivey's testimony, Dr. Botimer's opinion that her work caused her injury, and the concession by Dr. Nicola that the accident at work would have at least aggravated any preexisting rotator cuff tear Spivey may have had, thus requiring medical care. The referee further found that the treatment for Spivey's right shoulder was reasonable. As such, Spivey was entitled to reimbursement of all medical expenses incurred in treating her injured shoulder under I.C. § 72–432.

On May 8, 2000, the defendants filed a motion for reconsideration, arguing that the referee's decision did not adequately explain how Spivey's job placed her at a greater risk of developing a rotator cuff tear than would the same movements done by any member of the general public. The Commission denied the motion on May 26, 2000. The Commission determined that the record supported the decision and declined the defendants' "invitation to introduce risk analysis from the occupational disease legal theory into the accident and injury legal theory."

Appellants filed their timely notice of appeal on June 28, 2000.

## II.

## STANDARD OF REVIEW

■ In *Jensen v. City of Pocatello,* 135 Idaho 406, 409, 18 P.3d 211, 214 (2000), this Court set forth the following standard of review:

When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson,* 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson),* 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

Whether an injury arose out of the course of employment is a question of fact to be determined by the Commission. *Kessler ex. Rel. Kessler v. Payette County,* 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.,* 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). On appeal, this Court is not to re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented.

*See Warden v. Idaho Timber Corp.,* 132 Idaho 454, 457, 974 P.2d 506, 509 (1999). *Jensen,* 135 Idaho at 409, 18 P.3d at 214.

## III.

## ANALYSIS

**A. The Commission's Finding That Spivey Sustained An Injury Caused By An Accident Arising Out Of And In The Course Of Her Employment Was Supported By Substantial And Competent Evidence.**

■ The appellants urge that Spivey failed to show that her injury was the result of a work-related accident. Spivey had degenerative arthritis and did not establish conclusively that the act of reaching across a conveyor belt at work was an accident from which her injury arose. They argue that the act of reaching across a conveyor belt does not meet the definition of an accident, because the motion is not an unexpected or untoward event. Appellants contend that Spivey's muscle mass had degenerated to the point where reaching for anything could have caused the tear. They suggest that because Spivey likely reaches for many items throughout her daily routine, her employment did not increase the potential for an accident resulting in an injury.

Further, appellants contend that the Commission erred by not requiring the respondent to establish that her job placed her at a greater risk of incurring an injury than did her regular activities.

■ An analysis of whether the accident requirement has been met must begin with a review of the relevant statutory language. Idaho Code section 72–102(17)(b) defines accident as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." An injury is defined as "a personal injury caused by an accident arising out of and in the course of any employment covered by the worker's compensation law." I.C. § 72–102(17)(a). Whether an employee is entitled to compen-

sation under the Worker's Compensation Act requires that the injury must have been caused by an accident "arising out of and in the course of any employment." *Dinius v. Loving Care and More, Inc.,* 133 Idaho 572, 574, 990 P.2d 738, 740 (1999) (citations omitted); *Seamans v. Maaco Auto Painting,* 128 Idaho 747, 918 P.2d 1192 (1996). "The words 'out of' have been held to refer to the origin and cause of the accident and the words 'in the course of' refer to the time, place, and the circumstances under which the accident occurred." *Dinius,* 133 Idaho at 574, 990 P.2d at 740 (citation omitted). If there is doubt surrounding whether the accident in question arose out of and in the course of employment, the matter will be resolved in favor of the employee. *Id.* (citations omitted). "Whether an injury arose out of and in the course of employment is a question of fact to be decided by the Commission." *Id.* (citation omitted). To receive benefits, a claimant must present medical evidence that supports a claim for compensation to a reasonable degree of medical probability. *Duncan v. Navajo Trucking,* 134 Idaho 202, 203, 998 P.2d 1115, 1116 (2000). An employer takes an employee as it finds him or her; a preexisting infirmity does not eliminate the opportunity for a worker's compensation claim provided the employment aggravated or accelerated the injury for which compensation is sought. *Wynn v. J.R. Simplot Co.,* 105 Idaho 102, 104, 666 P.2d 629, 631 (1983).

In this claim, Spivey pointed to one specific incident that occurred on October 28, 1997, resulting in her injury. While reaching across the conveyor belt to remove a bad seed, she felt a pop followed by burning in the top of her right shoulder. An important point is that she was the only employee at that end of the conveyor belt; she testified that she was reaching to the middle of the belt when she heard the pop. That day, she experienced pain and was unable to lift her arm up to the back of her head. She reported the incident on October 29, 1997, and was told that if the pain became intolerable, Novartis would send her to a doctor. She continued working with continuous and increasing pain in her right shoulder. On or about January 21, 1998, Spivey requested medical

care and was diagnosed with a rotator cuff tear.

The damage resulting from reaching across the belt meets the definition of an accident as defined by I.C. § 72–102(17)(b). It was an unexpected, unlooked for mishap resulting from her employment. The pop, burning, and subsequent pain can be reasonably located in time and place to the specific reaching incident that occurred on October 28, 1997. Spivey's rotator cuff tear meets the statutory definition of an injury—it was personal to her and was caused by an accident in the course of her employment. Dr. Botimer's testimony and Dr. Nicola's testimony on cross-examination establish that Spivey's injury was either caused by her reaching across the conveyor belt, or at a minimum, aggravated her shoulder causing the tear. There is substantial and competent evidence in the form of Spivey's testimony, doctors' testimony, and medical proof to support the Commission's findings.

### B. The Commission Properly Refused To Utilize A Greater Risk Analysis Within The Context Of Accident/Injury Cases.

Appellants additionally urge that the Commission erred in its refusal to utilize a greater risk analysis in this case when determining whether the respondent was entitled to benefits. The appellants cite to *Wells v. Robinson Constr. Co.*, 52 Idaho 562, 16 P.2d 1059 (1932), for the proposition that to receive benefits, the claimant must establish that her employment placed her at a greater risk for injury than did her daily activities. They argue that the testimony of Drs. Botimer and Nicola support their position that Spivey could have sustained her injury performing any one of her daily activities. Because her job did not place her at greater risk for injury than her daily routine, appellants contend that there is not substantial and competent evidence to support the Commission's findings.

■■■ The Commission's refusal to utilize a greater risk analysis in reaching its holding was proper. The statutory language is clear on its face as to what is required of a claimant seeking compensation for an injury sustained during an accident that arose out of and in the course of employment.

Much of the appellants' argument is based on *Wells*, a case that was subsequently overruled by this Court in *Mayo v. Safeway Stores, Inc.*, 93 Idaho 161, 457 P.2d 400 (1969). In *Wells*, the employee was killed after being struck by lightening while working at the job site. In denying death benefits to Wells' widow, this Court stated that to be awarded compensation, a causal connection between the accident and employment must be established. *Wells*, 52 Idaho at 566, 16 P.2d at 1061. It further stated that if the worker's risk of being exposed to a hazard resulting in injury was greater than or unique to "other persons of the same locality," then the accident would be seen as arising out of and in the course of employment. If the risk was not greater, then the accident would not be work-related and benefits would be denied.

In *Mayo*, a store manager was killed by a co-worker, who had no known personal or work-related problems with Mayo. In awarding benefits to Mayo's widow, this Court held that "when injury results from a neutral cause, a rebuttable presumption arises that the injury arose out of the employment. The burden is thus shifted to the employer to prove that the injury was caused by a factor personal to the employee." *Mayo*, 93 Idaho at 164, 457 P.2d at 403. It went on to hold that being struck by lightening while at work was a "neutral cause" and justified compensation, specifically overruling *Wells*.

■■■ In *Kessler ex. Rel. Kessler v. Payette County*, 129 Idaho 855, 934 P.2d 28 (1997), this Court again discussed the burden of proof necessary in an accident/injury case. This Court recognized that "when an injury occurs on an employer's premises, a presumption that the injury arose out of and in the course of employment arises." *Id.* at 859, 934 P.2d at 32. Further, an employee incurs an injury in the course of employment, "if the worker is doing the duty that the worker is employed to perform." *Id.* "An injury is considered to arise out of employment when a causal connection exists between the circumstances under which the

work must be performed and the injury of which the claimant complains." *Id.* at 860, 934 P.2d at 33.

In this case, the appellants suggest a return to the rationale of *Wells* by requiring Spivey to prove that her job duties placed her at a greater risk for injury than that encountered by the general public performing the same physical motions. However, a greater risk analysis is no longer required of a claimant in light of *Mayo* and *Kessler.* Spivey provided substantial and competent evidence to allow the Commission to conclude that she had suffered a compensable injury. The burden was on the appellants to present evidence that showed the injury was personal to Spivey. However, even the appellants' medical expert testified on cross-examination that if Spivey had a preexisting tear, her employment would have aggravated her condition. Though the appellants may have presented medical testimony that contradicted Spivey's evidence, the Commission's role is to weigh the evidence presented and resolve factual disputes. The Commission did so, and found in favor of the respondent. We affirm.

### C. Spivey Is Entitled To Attorney Fees Under I.C. § 72–804.

The respondent requested attorney fees under I.C. § 72–804, pointing out that all the appellants have asked this Court to do is second-guess the Commission's factual findings. As such, Spivey argues the appellants' appeal is without reasonable grounds, justifying an award of attorney fees.

Idaho Code section 72–804 allows for the award of attorney fees if "the employer or his surety contested a claim for compensation made by an injured employee ... without reasonable ground...." Appellants have suggested that the issue before this Court is a question of law, but it is clearly one of fact—whether substantial and competent evidence was presented to support the Commission's findings. "Attorney fees and costs are properly awarded when an appeal asks this Court to do nothing more than reweigh the evidence submitted to the Commission." *Duncan,* 134 Idaho at 204, 998

P.2d at 1117. We find that the respondent is entitled to attorney fees under I.C. § 72–804.

### IV.

### CONCLUSION

The respondent, Spivey, met her burden by establishing that she sustained an injury that resulted from an accident that arose out of and in the course of her employment. A greater risk analysis is not required within the context of accident/injury cases to determine a compensable injury. This Court affirms the Commission's decision. Attorney fees and costs are awarded to respondent.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN, concur.